1  CHRISTOPHER J. KELLER (*pro hac vice*)
   JONATHAN GARDNER (*pro hac vice*)
2  **LABATON SUCHAROW LLP**
   140 Broadway
3  New York, New York  10005
   Telephone: (212) 907-0700
4  Facsimile: (212) 818-0477

5  *Attorneys for Lead Plaintiff Kwok Wong*
   *and Lead Counsel for the Class*
6
   LIONEL Z. GLANCY #134180
7  PETER A. BINKOW #173848
   MICHAEL GOLDBERG #188669
8  **GLANCY BINKOW & GOLDBERG LLP**
   1801 Avenue of the Stars, Suite 311
9  Los Angeles, California 90067
   Telephone: (310) 201-9150
10 Facsimile: (310) 201-9160

11 *Local Counsel for Lead Plaintiff Kwok Wong*
   *and the Class*
12

13              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
14 _____

15 KEVIN D. RAMSEY, Individually and )   Civil Action No. CV-08-04561 GAF
   on Behalf of All Similarly Situated, )  (RCx)
16                                    )
                          Plaintiff, )   LEAD PLAINTIFF'S UNOPPOSED
17          v.                        )   MOTION FOR PRELIMINARY
                                      )   APPROVAL OF PROPOSED
18 MRV COMMUNICATIONS INC.,           )   CLASS ACTION SETTLEMENT AND
   NOAM LOTAN, SHAY GONEN,            )   MEMORANDUM OF POINTS
19 MICHAEL BLUS, KEVIN RUBIN,         )   AND AUTHORITIES IN SUPPORT
   GUY AVIDAN, GUENTER               )   THEREOF
20 JAENSCH, IGAL SHIDLOVSKY,          )
   DANIEL TSUI, BARUCH FISHCHER,)     Date:    May 17, 2010
21                                    )   Time:    9:30 a.m.
                         Defendants. )   Before:  The Hon. Gary A. Feess
22 _____

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

I.      DESCRIPTION OF THE LITIGATION ................................................ 3

II.     SETTLEMENT DISCUSSIONS ............................................................ 6

III.    THE PROPOSED SETTLEMENT ........................................................ 7

IV.     PROPOSED SCHEDULE OF EVENTS ............................................... 8

ARGUMENT ......................................................................................................... 9

I.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL .................. 9

        A.      The Settlement Is the Result of a Thorough, Rigorous
                and Arm's-Length Process ................................................. 10

        B.      The Settlement is Well Within the Range of
                Reasonableness ................................................................. 12

II.     THE PROPOSED NOTICE PROGRAM SATISFIES RULES
        23(d)  AND (e) AND DUE PROCESS REQUIREMENTS ....................... 14

III.    THE COURT SHOULD PRELIMINARILY CERTIFY THE
        SETTLEMENT CLASS ....................................................................... 16

        A.      Standards Applicable to Class Certification ..................... 16

        B.      The Settlement Class Meets the Requirements of Rule
                23(a) ................................................................................. 17

                1.      Rule 23(a)(1): Numerosity ..................................... 17

                2.      Rule 23(a)(2): Questions of Law or Fact Are
                        Common ................................................................. 18

                3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ............... 18

                4.      Rule 23(a)(4): The Lead Plaintiff Is Adequate ....................... 19

        C.      The Settlement Class Meets the Requirements of Rule
                23(b)(3) ............................................................................. 20

                1.      Common Questions of Law or Fact Predominate .................. 20

                2.      A Class Action Is a Superior Method of Adjudication ........... 21

        D.      Lead Counsel Should Be Appointed Class Counsel Under
                Rule 23(g) ......................................................................... 22

CONCLUSION .................................................................................................... 23

1

## **TABLE OF AUTHORITIES**

2

3  **Cases**                                                                    **Page(s)**

4  *Affiliated Ute Citizens v. United States,*
      406 U.S. 128 (1972) ...........................................................................iii

5

6  *Amchem Products v. Windsor,*
      521 U.S. 591 (1997) ...........................................................................20

7  *Arnold v. United Artists Theatre Cir. Inc,*
      158 F.R.D. 439 (N.D. Cal. 1994) .......................................................17

8

9  *Basic Inc. v. Levinson,*
      485 U.S. 224 (1988) ...........................................................................21

10  *Blackie v. Barrack,*
      524 F.2d 891 (9th Cir. 1975),

11        *cert. denied,* 429 U.S. 816 (1976) ..........................................16, 18

12  *In re Broadwing ERISA Litigation,* No. 1:02-cv-00857,
      2006 WL3831382 (S.D. Ohio Oct. 5, 2006) ......................................14

13

14  *Cammer v. Bloom,*
      711 F.Supp. 1264 (D.N.J. 1989) ......................................................21

15  *Churchill Village, L.L.C. v. Gen. Elec.,*
      361 F.3d 566 (9th Cir. 2004)........................................................12, 15

16

17  *Class Plaintiffs v. City of Seattle,*
      955 F.2d 1268 (9th Cir. 1992)............................................................9

18  *In re Computer Memories Sec. Litigation,*
      111 F.R.D. 675 (N.D. Cal. 1986) .....................................................18

19

20  *In re Cooper Cos. Sec. Litigation,*
      254 F.R.D. 628 (C.D. Cal. 2009) ................................................16, 20

21  *In re Daou Sys., Inc. Sec. Litig.,*
      411 F.3d 1009 (9th Cir. 2005).....................................................13, 14

22

23  *Desai v. Deutsche Bank Sec. Ltd.,* No. 08-55081,
      2009 WL 2245223 (9th Cir. July 29, 2009)................................16, 22

24  *Dukes v. Wal-Mart, Inc.,*
      509 F.3d 1168 (9th Cir. 2007)...........................................................16

25

26  *Dura Pharms v. Broudo,*
      544 U.S. 336 (2005) .........................................................................13

27  *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*
      No. MDL, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ...................18

28

*In re Gilead Sci. Sec. Litigation,*
    536 F.3d 1049 (9th Cir. 2008)............................................................................... 14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)............................................................................... 20

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ............................................................................... 17

*Jaffe v. Morgan Stanley & Co.,* No. C-06-3903 TEH,
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008)......................................................... 16

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978)................................................................................. 19

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998)................................................................................. 9

*McPhail v. First Command Fin. Planning, Inc.,*
    247 F.R.D. 598 (S.D. Cal. 2007)........................................................................... 22

*Mendoza v. Tucson Sch. District No. 1,*
    623 F.2d 1338 (9th Cir. 1980)............................................................................... 15

*Metzler Inv. GMBH v. Corinthian Coll. Inc.,*
    540 F.3d 1049 (9th Cir. 2008) .............................................................................. 13

*Mullane v. Cent. Hanover Bank & Trust  Co.,*
    339 U.S. 306 (1950) ............................................................................................. 15

*Negrete v. Allianz Life Ins. Co. of North America,*
    238 F.R.D. 482 (C.D. Cal. 2006) .......................................................................... 20

*In re Omnivision Technologies, Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. 2008) .................................................................. 11

*Perez-Funez v. Dist Dir., I.N.S.,*
    611 F. Supp. 990 (C.D. Cal. 1984) ...................................................................... 17

*Satchell v. Federal Express Corp.,*  Nos. C03-2659, C03-2878 SI,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................... 10, 11

*In re Syncor ERISA Litigation,*
    227 F.R.D. 338 (C.D. Cal. 2005) .......................................................................... 18

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.,*
    No. 05 CV 1898 (SAS),
    2006 WL 2161887 (S.D.N.Y Aug. 1, 2006) ........................................................ 21

*In re THQ, Inc., Sec. Litigation,* No. CV-001783 AHM (EX),
    2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ..................................................... 16

*Torrisi v. Tucson Electric Power Co.,*
    8 F.3d 1370 (9th Cir. 1993).................................................................................... 9

*Weinberger v. Jackson*,
    102 F.R.D. 839 (N.D. Cal. 1984) ...................................................................... 18

*Welly v. Alexy*
    155 F.R.D. 654 (N.D. Cal. 1994) ...................................................................... 17

*West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH,
    2006 WL 1652598 (E.D. Cal. June 13, 2006)............................................. 9, 12

*Yammer v. Boich,* No. C-92-20597 RPA,
    1994 WL 514035 (N.D. Cal. Sept. 15, 1994) .............................................. 17

*Young v. Polo Retail, LLC*,  No. C-02-4546 VRW,
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ............................................. 9, 10

## STATUTES

15 U.S.C. § 78u-4(a) ............................................................................................ 1

Fed. R. Civ. P. 23(a) ...................................................................................... 16, 18

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 1, 20

Fed. R. Civ. P. 23(b)(3)(A) .................................................................................... 22

Fed. R. Civ. P. 23(g) ............................................................................................ 22

## OTHER  AUTHORITIES

4 Newberg on Class Actions § 11.51 .................................................................. 10

Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements:*
*2009 Review and Analysis* (Cornerstone Research, 2010) ...................................... 12

Manual for Complex Litigation, Second § 30.44 .................................................. 10

Stephanie Plancich, Svetlana Starykh,
*2008 Trends in Securities Class Actions*, (NERA Dec. 2009) ............................... 12

**PRELIMINARY STATEMENT**

Kwok Wong, as Court-appointed lead plaintiff ("Lead Plaintiff") in this proposed class action, through his counsel Labaton Sucharow LLP ("Lead Counsel"), submits this memorandum of law in support of his unopposed motion, pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e) for preliminary approval of the proposed $10 million settlement (the "Settlement") of claims against defendants MRV Communications, Inc. ("MRV" or the "Company"), Noam Lotan, Shay Gonen, Kevin Rubin, Guy Avidan, Michael Blust, Guenter Jaensch, Igal Shidlovsky, Daniel Tsui and Baruch Fischer (collectively, the "Individual Defendants" and together with MRV, "Defendants"), as set forth in the Stipulation and Agreement of Settlement, dated April 16, 2010 (the "Stipulation").[1]

Lead Plaintiff requests preliminary certification of a settlement class of all Persons who purchased the common stock of MRV during the period between March 31, 2003 and October 8, 2009, inclusive, (the "Class Period") and were damaged thereby (the "Settlement Class"), and appointment of Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.  Lead Plaintiff also seeks approval of the form, substance and the requirements of the proposed Notice of Pendency of Class Action and Proposed Settlement ("Notice"), Proof of Claim and Release form ("Proof of Claim") and the Summary Notice of Pendency of Class Action and Hearing on Proposed Settlement ("Summary Notice"), appended as Exhibits 1-3 to the proposed Preliminary Approval Order Providing for Notice and Hearing in Connection With Proposed Class Action Settlement ("Preliminary Approval Order"), and the means and methods for disseminating notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*

---

[1]   All capitalized terms used herein are defined in the Stipulation and have the same meaning as set forth therein. The Stipulation is annexed as Exhibit 5 to the Declaration of Jonathan Gardner ("Gardner Decl."), dated April 16, 2010.

1    In addition to the approvals mentioned above, the proposed Preliminary

2  Approval Order seeks, *inter alia*: (i) the scheduling of a hearing (the "Settlement

3  Hearing") to consider final approval of the Settlement; (ii) approval of the

4  procedures by which Persons may request to be excluded, or "opt out", from the

5  Settlement Class; and (iii) approval of the procedures for Class Members to object

6  to the terms of the Settlement, Plan of Allocation, or applications for fees and

7  expenses.

8    Lead Plaintiff submits that the $10 million proposed Settlement is an

9  excellent result for the Settlement Class, both quantitatively and when considering

10  the risk of a lesser recovery if the case proceeded through dispositive motions and

11  trial.  According to estimates by Lead Plaintiff's consulting damages expert, the

12  Settlement would recover approximately 20% of alleged damages arising from two

13  stock drops.  To put this number into perspective, the median recovery in other

14  securities class actions during the past five years has been estimated at 2.5%

15  according to an analysis by NERA Economic Consulting and 2.3% by Cornerstone

16  Research.  (*See* Declaration of Jonathan Gardner ("Gardner Decl."), dated April

17  16, 2010, Exhibits 1 and 2.)  The Settlement Amount provides a significantly

18  greater percentage of recovery for the Settlement Class.

19    With respect to the potential for a lesser recovery in the future, there were

20  two main risks to recovery in this matter.  First, there was a substantial risk of

21  failure to prove that Defendants acted with scienter, as required by the securities

22  laws.  Specifically, whether Defendants acted knowingly or recklessly with respect

23  to the Company's failure to record a compensation expense for backdated options.

24  Second, the alleged damages suffered by the proposed class would have been

25  vigorously contested by Defendants, centering on complex questions of loss

26  causation that have been the subject of renewed debate within the Court of Appeals

27  for the Ninth Circuit.  For the reasons stated herein, Lead Plaintiff respectfully

28  requests that the Court grant this unopposed Motion.

## I.     DESCRIPTION OF THE LITIGATION

On July 11, 2008, an initial class action complaint alleging violations of the federal securities laws against Defendants, captioned *Ramsey* v. *MRV Communications, Inc.*, *et al.*, No. 08-04561 (GAF) (RCx), was filed in this Court (the "Litigation").  By Order entered December 1, 2008, the Court appointed Kwok Wong to serve as Lead Plaintiff, and approved Lead Plaintiff's selection of Labaton Sucharow LLP ("Labaton Sucharow") to serve as Lead Counsel.  In this matter, Lead Plaintiff performed his own analysis and investigation and selected Labaton Sucharow as counsel due, *inter alia*, to its extensive experience in stock option backdating cases.

The initial complaint was later amended by the filing of the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws on January 30, 2009 (the "CCAC"), which alleged securities fraud violations against Defendants based on allegations that certain directors and officers of MRV improperly backdated the Company's stock option grants and made materially false and misleading statements regarding MRV's financial results and accounting for stock options.  The CCAC alleged that Defendants' misrepresentations and omissions rendered the Company's public statements and periodic reports filed with the Securities and Exchange Commission ("SEC") materially false and misleading in violation of Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.  The CCAC further alleged that, as a result of Defendants' misrepresentations and omissions, the price of MRV's common stock was artificially inflated during the Class Period.

The CCAC was based upon Lead Plaintiff and Lead Counsel's extensive investigation of the claims, which included, review and analysis of: (a) publicly available information concerning Defendants, including newspaper articles, online publications, stock price movement, statements at analyst conferences, and Bloomberg reports; (b) regulatory filings made by Defendants with the SEC; (c)

securities analyst reports; and (d) press releases and media reports issued by and disseminated by Defendants.  Lead Counsel also met with a damages expert to analyze this information and consulted with Professor Eric Lie, a leading statistician studying stock options backdating whose scholarly work on the issue is largely responsible for identifying potential backdating practices at hundreds of publicly traded companies.

Anticipating that further pleadings by all Parties would be necessary following MRV's planned issuance of restated financial statements in October 2009, the Defendants and Lead Plaintiff agreed to cease briefing a motion to dismiss until such a restatement was made.  Thus Defendants postponed filing a motion to dismiss the CCAC to allow Lead Plaintiff to incorporate the facts of the restatement into its pleadings.

MRV filed restated financial statements on or about October 8, 2009 as of and for the years ended December 31, 2007 and December 31, 2006, and related disclosures and financial data for the years ended December 31, 2007, December 31, 2006, December 31, 2005 and December 31, 2004, and the quarter ended March 31, 2008 (the "Restatement").  Pursuant to an internal investigation by the Special Committee of the Board of Directors, the Restatement determined that MRV's previously filed financial statements could not be relied upon, and corrected errors linked to stock based compensation, acquisition-related accounting and other accounting matters.  It adjusted annual expenses from 1994 through 2007 a total of $74.1 million, reflecting revisions to stock options measurement dates, reprisings and modifications, acquisitions, and options grants made to non-employees.

The Restatement concluded that stock option exercise prices were generally determined on a quarterly basis with hindsight.  It explained that prior to March 31, 2004, MRV's option granting process was determined by two informal, separate and contemporaneous processes, in which one process determined the list of

1  recipients and number of options, while the other chose a grant date by reviewing

2  the closing stock prices of the preceding quarter, and selecting a date on which the

3  stock price was at, or near, the quarterly low.

4      The Restatement stated that this process violated Accounting Principles

5  Board Opinion No. 25 ("APB 25"), which mandates that the intrinsic value of each

6  option, reflected by the excess of the fair value of the underlying stock over the

7  exercise price of the option on the measurement date, should have been recorded as

8  compensation expense.

9      Although the Restatement could no longer support these grant dates as

10  proper measurement dates, it affirmed that no evidence was found of intentional

11  wrongdoing or that any option grants were made for the personal benefit of those

12  awarding options.  MRV attributed these failures to the existence of material

13  weaknesses in the internal controls over financial reporting related to maintaining

14  an effective approval and review over non-routine transactions.

15     On February 16, 2010, Lead Plaintiff filed a Second Amended Consolidated

16  Class Action Complaint for Violation of the Federal Securities Laws ("SCAC"),

17  the operative complaint in the Litigation, incorporating allegations and admissions

18  set forth in the Restatement.

19      Prior to executing the Stipulation, Lead Plaintiff conducted extensive

20  confirmatory discovery, reviewing 17,000 pages of "core" documents identified by

21  MRV as relating to the allegations in the SCAC that included, *inter alia*: (i) emails;

22  (ii) internal memoranda; (iii) corporate minutes of MRV's board; (iv) corporate

23  minutes of the Compensation Committee that granted the stock options at issue; (v)

24  unanimous written consents concerning the stock options; (vi) option agreements;

25  (vii) spreadsheets from MRV, including software used by the Company to track its

26  stock option grants; (viii) submissions to the SEC; (ix) documents directly related

27  to MRV's implementation of SOX processes; and (x) the source materials utilized

28  by the Company in connection with its extensive, year-long Restatement process.

In conducting the confirmatory discovery, Lead Counsel matched correspondence  with each individual grant to determine how award decisions were made.  MRV's management's choice of exercise pricing and the timing of each grant was scrutinized over the grant periods.  Each grant was a compilation of discussions and procedures from the initial decision to grant an option, including the determination of the number of options each optionee should receive and the construction of the terms of each option agreement.

Lead Counsel also interviewed Chris King, the Company's Chief Financial Officer ("CFO") and Chief Compliance Officer at the time that the allegations in this Litigation came to light regarding the backdating and the Company's investigatory and corrective measures, as well as Ann Marie Frisch, the stock option administrator for the Company during the entire Class Period.  Both King and Frisch confirmed that while the Company backdated the grant date for Company stock options, no one in management did so intentionally to avoid recording appropriate compensation expense.

Substantively, this discovery revealed MRV's options-related policies and procedures, during the ordinary course of business and through correspondence of senior management, board members, employees and third party optionees.  This information generally comported with the statements made by MRV in its Restatement that while the Company backdated option grants there was no direct evidence of intentional wrongdoing by anyone in management.  Among other things, Lead Counsel searched for proof that management was specifically aware that backdating of option grants to provide for "in-the-money" options required the Company to record a compensation expense.  No such evidence was uncovered.

## II.   SETTLEMENT DISCUSSIONS

The Parties participated in a series of formal and informal arm's-length settlement discussions and negotiations culminating in a mediation before an independent and highly experienced mediator, Anthony A. Piazza ("Mediator

Piazza") of Gregoria Haldeman Piazza Rotman Frank & Feder, on November 7, 2009.  Prior to mediation, MRV provided Lead Plaintiff and Lead Counsel with confidential documents in order to facilitate a productive mediation: (i) a spreadsheet for each option grant depicting the original grant date, the original strike price, the revised measurement date, the closing stock price on the revised measurement date, the recipients and the number of shares granted; (ii) reconciliation schedules created by Pricewaterhouse Coopers analyzing each option grant; and (iii) documents relied upon in creating the reconciliation schedules.  Lead Plaintiff, Lead Counsel and Plaintiffs' consulting expert, Professor Erik Lie, analyzed the materials provided by MRV in advance of the mediation.

As discussed herein, there were numerous issues about which the two sides disagreed: (i) the amount by which MRV stock was allegedly artificially inflated (if at all) during the Class Period; (ii) whether Lead Plaintiff could plead, and prove, that Defendants acted with scienter; (iii) the extent to which the alleged misstatements influenced (if at all) the trading price of MRV stock; and (iv) whether the statements made or facts allegedly omitted were material, false, misleading or actionable.  With the Parties expressing differing views regarding the merits of the claims and the cause of the drops in share price, the principle Settlement was achieved only with the assistance of Mediator Piazza.

Through these settlement negotiations, the Parties reached an agreement in principle to completely resolve the Litigation, subject to the completion of confirmatory discovery and memorialization of the final terms of the Settlement in a Stipulation.

## III.    THE PROPOSED SETTLEMENT

Pursuant to the proposed Settlement, Defendants will deposit $10 million into an interest bearing escrow account (the "Settlement Fund") no later than fifteen (15) business days after the date on which the Court enters the Preliminary

Approval Order.  In exchange for this payment, upon the Effective Date of the Settlement, the Lead Plaintiff and the Settlement Class will release all Released Claims against the Released Defendant Parties. The only agreement between Lead Plaintiff and the Defendants about the Settlement is the Stipulation.

Lead Plaintiff and Lead Counsel believe that the proposed Settlement is an excellent recovery, and is in all respects fair, adequate, reasonable and should be granted preliminary approval.

## IV.   PROPOSED SCHEDULE OF EVENTS

Lead Counsel and Lead Plaintiff request permission to provide notice of the Settlement to Class Members at this time.  Lead Plaintiff respectfully proposes the following schedule for the various Settlement events, based upon, in part, the terms of the Stipulation:

- Deadline for mailing individual Notices and Proofs of Claim (the "Notice Date"): *10 business days after entry of Preliminary Approval Order.*

- Deadline for publication of Summary Notice in *Investor's Business Daily* and transmission over *PR Newswire*: *within 14 calendar days of the Notice Date*.

- Deadline for filing motions in support of Settlement, counsel's application for award of attorneys' fees and expenses and Lead Plaintiff's application for costs and expenses pursuant to the PSLRA:  *no later than 7 calendar days before the Settlement Hearing*.

- Deadline for submission of requests for exclusion from the Settlement Class or objections to the Settlement, Plan of Allocation, the request for attorneys' fees and expenses or Lead Plaintiff's request for costs and expenses: *no later than 14 calendar days before the Settlement Hearing*.

1      • Settlement Hearing: at the Court's convenience, but at least *45*

2        *calendar days after the Notice Date.*

3      • Deadline for submission of Proofs of Claim: *postmarked no later*

4        *than 120 calendar days after the Notice Date.*

5      This schedule is similar to those used and approved by numerous courts in

6  class action settlements and provides due process to Settlement Class Members

7  with respect to their rights concerning the settlement.  *See Torrisi v. Tucson Elec.*

8  *Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

9                                **ARGUMENT**

10  **I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

11     Strong judicial policy favors the settlement of class actions.  *Class Plaintiffs*

12  *v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska*

13  *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *West v. Circle K Stores, Inc.*, No.  S-

14  04-0438 WBS GGH, 2006 WL 1652598, at * 1 (E.D. Cal. June 13, 2006).

15  Settlements of complex cases greatly contribute to the efficient utilization of scarce

16  judicial resources and achieve the speedy resolution of justice.

17     Approval of class action settlements normally proceeds in two stages:  (i)

18  preliminary approval, followed by notice to the class; and (ii) final approval.  *See,*

19  *e.g.*, *West*, 2006 WL 1652598, at * 2.  The Litigation is now at the first stage of the

20  process.  Standards governing whether preliminary approval should be granted

21  have "both a procedural and a substantive component."  *Young v. Polo Retail, LLC*,

22  No. C-02-4546 VRW, 2006 WL 3050861, at * 5 (N.D. Cal. Oct. 25, 2006).  The

23  court in *Young*, explained the process:

24

25

26

27

28

> "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . ." Manual for Complex Litigation, Second § 30.44 (1985).  In addition, "[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid."  Newberg on Class Actions § 11.25 (1992).  (Omission in original).

*Id.*; *see also Satchell v. Fed. Express Corp.*, Nos. C03-2659, C 03-2878 SI, 2007 WL 1114010, at * 4 (N.D. Cal. April 13, 2007) (granting preliminary approval after finding proposed settlement was non-collusive, had no obvious defects and was within the range of possible settlement approval).  Applying the standards set forth above, the Settlement should be preliminarily approved.

## A.    The Settlement Is the Result of a Thorough, Rigorous and Arm's-Length Process

The Parties have vigorously litigated, investigated and negotiated the Litigation since its inception.  The Settlement is the result of a series of negotiations that culminated in a mediation before Mediator Piazza, an experienced mediator with considerable knowledge and expertise in the field of federal securities law.  Informal settlement discussions between the Parties began in late 2008.  The Parties agreed that negotiations should be postponed until MRV released its Restatement and provided Lead Plaintiff with confidential documents detailing the information discussed in the Restatement.  The Restatement and the supporting documents were then carefully reviewed and analyzed by Lead Plaintiff, Lead Counsel and Professor Lie in preparation for a formal mediation session.  On November 17, 2009, the Parties participated in such a session before Mediator Piazza, which resulted in the Parties reaching an agreement in principle that led to this Settlement.

Throughout the settlement negotiations and the mediation session, the strengths and weaknesses of the Parties' respective claims and defenses were fully

1   explored among the Parties and separately with Mediator Piazza.  The negotiations

2   focused on disputed issues of scienter, loss causation and damages.  With an

3   informed understanding of the nuances of the disputed issues in the Litigation, the

4   Parties agreed to the Settlement.

5        Courts have recognized that "[t]he assistance of an experienced mediator in

6   the settlement process confirms that the settlement is non-collusive."  *Satchell*,

7   2007 WL 1114010 at * 4.  Here Mediator Piazza played an active role in

8   discussing the relevant issues with the Parties and bringing about the Settlement.

9   The Courts have also stated that "the fact that the Settlement was reached after

10   exhaustive arm's-length negotiations, with the assistance of a private mediator

11   experienced in complex litigation, is further proof that preliminary approval should

12   be granted."  *Id*.

13        Although the Settlement was reached relatively early in the Litigation, as

14   discussed above, Lead Plaintiff and Lead Counsel had a thorough understanding of

15   the facts of the case and merits of the claims due to an extensive and thorough

16   review of: (i) publicly available information; (ii) the confidential Restatement

17   documents provided by Defendants; and (iii) extensive confirmatory discovery.

18        Throughout this process Lead Plaintiff also had the advice and counsel of

19   Labaton Sucharow, a firm with extensive experience in class action litigation and

20   options backdating cases (*See* Part III (D) below).  Courts have given considerable

21   weight to the opinion of experienced and informed counsel who support

22   settlement.  In deciding whether to approve a proposed settlement of a class action,

23   "[t]he recommendations of plaintiffs' counsel should be given a presumption of

24   reasonableness."  *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1043

25   (N.D. Cal. 2008).  In *Omnivision* the Court held that the recommendation of

26   counsel weighed in favor of settlement given their familiarity with the dispute and

27   their significant experience in securities litigation.  *Id*.  Labaton Sucharow likewise

28   has a thorough understanding of the merits of the Litigation and extensive

experience in securities litigation and options backdating cases in particular.
Labaton Sucharow's belief in the fairness and reasonableness of this Settlement
warrants a presumption of reasonableness.

**B.      The Settlement is Well Within the Range of Reasonableness**

"[A]t this preliminary approval stage, the court need only 'determine
whether the proposed settlement is within the range of possible approval.'"  *West*,
2006 WL 1652598, at * 11 (internal citation omitted).  This Settlement, in the
amount of $10 million, will recover approximately 20% of the alleged damages
estimated by Lead Plaintiff and Lead Counsel through their consultations with a
damages expert.[2]   This amount is well within the range of reasonableness for
several reasons.

First, a recent study by Cornerstone Research, reported that in 2009 the
median ratio of settlements to investor losses was 2.3%.  Ellen M. Ryan & Laura
E. Simmons, *Securities Class Action Settlements: 2009 Review and Analysis*
(Cornerstone Research, 2010) (Gardner Decl., Exhibit 3, page 5.)  In a report by a
similar organization, NERA Economic Consulting, in 2009 the median ratio of
settlements to investor losses was 2.5%.  Stephanie Plancich & Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2009 Year-End Update*
(NERA, December 2009) (Gardner Decl., Exhibit 2, page 20.)  Regardless of
which percentage it is compared to, the Settlement Amount offers a significantly
higher recovery for the Settlement Class.

The fairness and adequacy of the Settlement is further underscored by taking
into account the obstacles the Settlement Class would face in ultimately succeeding
on the merits, as well as the expense and likely duration of the litigation.  *See*
*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing

---

[2] Of course were the litigation to continue, Defendants would likely maintain
that <u>no</u> damages were incurred by the Class.

1    risk, expense, complexity, and likely duration of further litigation as factors

2    supporting final approval of settlement).

3          Lead Plaintiff believes that he could have established that Defendants

4    concealed the options backdating and that this practice served to disguise the true

5    compensation costs to the Company and resulted in the overstatement of earnings,

6    and that, when the practice was disclosed, the drop in MRV's market price

7    damaged class members.  However, Lead Plaintiff recognizes the risk that a jury

8    might not find that Defendants acted with the required state of mind, or that their

9    actions caused the alleged losses, or that, even if it reached such findings, a jury

10   might substantially reduce the amount of damages sought by Lead Plaintiff.

11          Defendants have denied that Lead Plaintiff has pled, or could prove, that

12   there was an intentional or severely reckless violation of the federal securities laws

13   or that Lead Plaintiff or the Settlement Class were harmed by the conduct alleged

14   in the SCAC.  As exemplified by the Restatement, Defendants have repeatedly

15   stated that  Defendants did not intentionally or recklessly fail to record

16   compensation expenses when granting the options.

17          Furthermore, Defendants have raised questions regarding the Settlement

18   Class's ability to plead or prove loss causation and believe that Lead Plaintiff

19   would be unable to establish that the drop in the market price of MRV stock was

20   caused by disclosures of stock option backdating.  The issue of causation in

21   backdating cases within the Ninth Circuit has been hotly contested, with litigants

22   debating the meaning and scope of the Supreme Court's decision in *Dura Pharms*

23   *v. Broudo*, 544 U.S. 336 (2005).  Lead Plaintiff would argue that *Dura* allows

24   plaintiffs to plead "a short and plain statement" that provides "some indication" of

25   the causal connection.  Whereas Defendants would likely argue that *Dura* created a

26   greater burden for plaintiffs.  The Parties would need to litigate the impact all

27   recent Ninth Circuit cases such as *Metzler Inv. GMBH v. Corinthian Coll. Inc.*, 540

28   F.3d 1049 (9th Cir. 2008) and *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1009 (9th

Cir. 2005), which discuss what "disclosures" need to be revealed to the public to establish loss causation, as well as *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008), which examines the pleading requirements for loss causation. These loss causation issues would no doubt be vigorously contested in a motion to dismiss and summary judgment were this case to proceed.

Accordingly, Lead Plaintiff faced the possibility of the Court granting the Defendants' motion to dismiss, further, regardless of who would ultimately be successful at trial, there is no doubt that both sides would have to present complex and nuanced information to a jury that would include a "battle of the experts" on the arcana of damages calculation, the proper accounting methodology for incentive stock options and securities disclosure requirements. The results of the trial would almost certainly not end the Litigation, as one side, or both, would likely appeal. It has been noted that "the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement." *In re Broadwing ERISA Litig.*, No. 1:02-cv-00857, 2006 WL 3831382, at * 3 (S.D. Ohio Oct. 5, 2006).

## II.     THE PROPOSED NOTICE PROGRAM SATISFIES RULES 23(d) AND (e) AND DUE PROCESS REQUIREMENTS

Lead Counsel proposes that mailed and published notice be given in the form of the Notice and Summary Notice, attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order. Notice to the Settlement Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process, comply with the Federal Rules of Civil Procedure and the PSLRA.

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust*

1   *Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *Mendoza v. Tucson Sch. Dist.*

2   *No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).  Lead Plaintiff proposes to give

3   interested parties notice in two ways: by first-class mail, addressed to all Class

4   Members who can reasonably be identified and located, and by publication notice

5   in *Investor's Business Daily* and transmission over *PR Newswire*.

6          The form and substance of the notice program are also sufficient.  "Notice is

7   satisfactory if it 'generally describes the terms of the settlement in sufficient detail

8   to alert those with adverse viewpoints to investigate and to come forward and be

9   heard.'"  *Churchill Village*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist.*

10  *No. 1*, 623 F.2d at 1352).  The proposed forms of notice describe in plain English

11  the terms and operation of the Settlement, the considerations that caused Lead

12  Plaintiff and Lead Counsel to conclude that the Settlement is fair, adequate and

13  reasonable, the maximum counsel fees and expenses that may be sought, the costs

14  and expenses that Lead Plaintiff will seek, the procedure for requesting exclusion

15  from the Settlement Class, the procedure for objecting to the Settlement, the

16  procedure for participating in the Settlement, and the date and place of the

17  Settlement Hearing.  The Notices will, when mailed and published as provided for

18  in the Preliminarily Approval Order submitted herewith, fairly apprise Class

19  Members of the Settlement and their options with respect thereto, and fully satisfy

20  all due process requirements.

21         Lead Counsel also proposes that the Court appoint Berdon Claims

22  Administration LLC ("Berdon") as the claims administrator for the Settlement.

23  Berdon has been a claims administrator for almost 20 years and has the experience

24  to efficiently and accurately act as the claims administrator here.  During that time,

25  it has administered hundreds of class action settlements and distributed $1.5 billion

26  in claims.  (*See* Gardner Decl., Exhibit 4, for background information about

27  Berdon and a list of its administrations over the past five years.)

28

1   **III.   THE COURT SHOULD PRELIMINARILY CERTIFY THE
2          SETTLEMENT CLASS**

3          **A.   Standards Applicable to Class Certification**

4          At the hearing on final approval of the Settlement, the Court will be asked to

5   grant final approval to the Settlement on behalf of a Settlement Class.  For that

6   reason, it is appropriate for the Court to consider, at the preliminary approval stage,

7   whether the certification of a Settlement Class appropriate.  *Jaffe v. Morgan*

8   *Stanley & Co.*, No. C-06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008).

9          The Litigation satisfies all the factors for certification and, if the action were

10  to proceed to trial, class certification would be appropriate.  In this Circuit,

11  "Rule 23 is . . . liberally construed in a securities fraud context because class

12  actions are particularly effective in serving as private policing weapons against

13  corporate wrongdoing."  *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D.

14  Cal. 2009) (internal citations omitted).  "[T]he law in the Ninth Circuit is very well

15  established that the requirements of Rule 23 should be liberally construed in favor

16  of class action cases brought under the federal securities laws."  *In re THQ, Inc.,*

17  *Sec. Litig.*, No. CV-001783 AHM (EX), 2002 WL 1832145, at * 2 (C.D. Cal., Mar.

18  22, 2002) (internal citations omitted).

19         Under Fed. R. Civ. P. 23(a), a class may be certified if: (i) it is so numerous

20  that joinder of all members is impracticable; (ii) there are questions of law and fact

21  common to the class; (iii) the claims or defenses of the representative parties are

22  typical of the claims or defenses of the class; and (iv) the representative parties will

23  fairly and adequately protect the interests of the class.  *Dukes v. Wal-Mart, Inc.*,

24  509 F.3d 1168, 1176 (9th Cir. 2007).  The proposed class additionally must fall

25  within one of the three categories of class actions defined in Fed. R. Civ. P. 23(b).

26  *See Desai v. Deutsche Bank Sec. Ltd.*, No. 08-55081, 2009 WL2245223, at * 3 (9th

27  Cir. July 29, 2009).

28         Lead Plaintiff requests that the Court preliminarily certify a class as follows:

1    all Persons who purchased the common stock of MRV between March 31, 2003

2    and October 8, 2009, inclusive, and were damaged thereby, excluding the

3    Defendants; the current and former officers and directors of the Company;

4    members of the immediate families of any excluded Person; the legal

5    representatives, heirs, successors, or assigns and any entity in which any Defendant

6    has or had a controlling interest.

7        **B.    The Settlement Class Meets the Requirements of Rule 23(a)**

8            **1.    Rule 23(a)(1): Numerosity**

9        Rule 23(a)(1) requires that the class be so numerous that joinder of all

10   members is impracticable.  "[I]mpracticable does not mean 'impossibility', but

11   only the difficulty or inconvenience of joining all members of the class.  *Harris v.*

12   *Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964).  There is

13   no fixed number of class members which either compels or precludes the

14   certification of a class.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D.

15   439, 448 (N.D. Cal. 1994); s*ee also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D.

16   Cal. 1994) (classes consisting of as few as 25 members have been held large

17   enough to justify certification).  The exact size of the class need not be known so

18   long as general knowledge and common sense indicate that the class is large.

19   *Perez-Funez v. Dist Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).  In

20   securities litigation, courts regularly find the numerosity requirement satisfied with

21   respect to putative purchasers of nationally traded securities on the volume of

22   outstanding shares.  *Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at

23   * 3 (N.D. Cal. Sept. 15, 1994).

24       Here, there can be no dispute that the Settlement Class satisfies numerosity

25   and consists of (at least) thousands of investors.  MRV has more than 157 million

26   shares of common stock outstanding.  (*See* SCAC ¶ 19. (Dkt. 59))  Further, MRV's

27   common stock was actively traded on NASDAQ National Market System

28   throughout the Settlement Class Period.  *Id*.  Common sense dictates that these

1  shares were purchased by hundreds of thousands of investors, making joinder

2  impracticable.

### 2. Rule 23(a)(2): Questions of Law or Fact Are Common

4  Rule 23(a)(2) requires the existence of "questions of law or fact common to

5  the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require class members

6  to share all issues in the suit, but simply a single common issue. *Blackie,* at

7  902-03 . Indeed, "[t]he Ninth Circuit has repeatedly found that common issues

8  predominate in federal securities actions where the proposed class members have

9  all been injured by the same alleged course of conduct." *In re First Capital*

10  *Holdings Corp. Fin. Prods. Sec. Litig*., No. MDL 901, 1993 WL 144861, at * 6

11  (C.D. Cal. Feb. 26, 1993).

12  Common questions of both law and fact abound here. The central questions

13  of whether Defendants' public statements were false or material, whether

14  Defendants acted with the requisite mental state and whether the class relied on

15  Defendants' alleged misstatements and omissions are all the same for each class

16  member. The claims of each class member arise from the same operative facts and

17  share legal theories.

### 3. Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

19  Rule 23(a)(3), is satisfied where the claims of the proposed class

20  representatives arise from the same course of conduct that gives rise to the claims

21  of the other class members, and where the claims are based on the same legal

22  theory. *In re Computer Memories Sec. Litig*. 111 F.R.D. 675, 680 (N.D. Cal.

23  1986). Rule 23(a)(3) does not require plaintiffs to show that their claims are

24  identical on every issue to those of the class, but merely that significant common

25  questions exist. *In re Syncor ERISA Litig*., 227 F.R.D. 338, 344 (C.D. Cal. 2005).

26  Differences in the amount of damages, the size or manner of purchase, type of

27  purchase, and even the specific documents influencing the purchase will not render

28  the claim atypical in most securities actions. *See Weinberger v. Jackson*, 102

1    F.R.D. 839, 844 (N.D. Cal. 1984).

2         Here, Lead Plaintiff's claims are identical to those of the other members of

3    the Settlement Class.  He, like all members of the Settlement Class, purchased

4    MRV's common stock at allegedly artificially inflated prices during the Class

5    Period and claims to have suffered damages because of Defendants' alleged

6    material misstatements and omissions.

7              **4.    Rule 23(a)(4): The Lead Plaintiff Is Adequate**

8         Rule 23(a)(4), entails two showings: (i) class counsel must be qualified,

9    experienced and generally able to conduct the litigation; and (ii) there must be no

10   antagonism or disabling conflict between the interests of the named class

11   representative and the members of the class.  *See, e.g. Lerwill v. Inflight Motion*

12   *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

13        First, Labaton Sucharow, Court-appointed Lead Counsel for Lead Plaintiff

14   and the proposed class, is amply qualified, experienced and able to conduct this

15   litigation vigorously and effectively, and has ably represented Lead Plaintiff and

16   the proposed Settlement Class in this litigation.  (*See* Gardner Decl., Exhibit 1.)

17   Labaton Sucharow has a strong record of successfully litigating more than half a

18   dozen class actions alleging violations of the federal securities laws based on

19   improper stock option granting practices and has achieved noteworthy results.  In

20   2008, the firm settled *In re Mercury Interactive Corp. Securities Litigation*, No.

21   5:05-CV-3395 (N.D. Cal.), for $117.5 million, a figure representing one of the then

22   largest known settlements or judgments in an options backdating suit.

23        Second, there is no genuine conflict or antagonism between the claims of the

24   proposed class representative and those of the other members of the proposed

25   Settlement Class.  Lead Plaintiff and each member of the Settlement Class have a

26   strong and identical interest in establishing Defendants' liability.

27        Moreover, Lead Plaintiff has demonstrated his ability and willingness to

28   pursue the Litigation on behalf of the Settlement Class.  He was actively involved

1  in all aspects of this case, conducting his own investigation and retention of Lead

2  Counsel, engaging in strategy determinations with Lead Counsel, and actively

3  participating by telephone in the mediation.

4          **C.**    **The Settlement Class Meets the Requirements of Rule 23(b)(3)**

5            **1.**    **Common Questions of Law or Fact Predominate**

6        Rule 23(b)(3) sets forth two requirements, the first being that the questions

7  of law or fact common to the members of the class must "predominate" over any

8  questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  The

9  predominance inquiry "tests whether proposed classes are sufficiently cohesive to

10  warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S.

11  591, 623 (1997).  "When common questions present a significant aspect of the case

12  and they can be resolved for all members of the class in a single adjudication, there

13  is a clear justification for handling the dispute on a representative rather than an

14  individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)

15  (quoting treatise).  The predominance requirement is "readily met" in securities

16  class actions.  *Amchem,* 521 U.S. at 625.  *See also Cooper*, 254 F.R.D. at 632 ("As

17  the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a

18  glove.'") (internal citations omitted).

19        The common questions of law and fact noted above clearly predominate

20  over individual question because Defendants' alleged fraudulent statements and

21  omissions affected all Class Members in the same manner (i.e., through public

22  statements made to the market and documents publicly filed with the SEC).

23  Predominance of common questions generally will be found where, as here, "many

24  purchasers have been defrauded over time by similar misrepresentations, or by a

25  common scheme to which alleged non-disclosures related," *Negrete v. Allianz Life*

26  *Ins. Co. of North America*, 238 F.R.D. 482, 492 (C.D. Cal. 2006).  Generalized

27  proof will be necessary with respect to the issues of whether: (1) Defendants'

28  alleged misstatements and omissions were false and material to MRV investors; (2)

1  Defendants possessed the requisite scienter; and (3) MRV investors relied on

2  Defendants' alleged misstatements and omissions, and were damaged thereby.

3      Moreover, whether any Settlement Class Member relied on Defendants'

4  alleged misstatements and omissions does not raise individual issues in this case

5  because reliance is presumed pursuant to *Basic's* fraud on the market doctrine.

6      The fraud on the market doctrine, as enunciated by the Supreme Court in

7  *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), dispenses with the requirement that an

8  investor prove awareness or reliance of a particular statement.  *Id*. at 241-42.  In

9  order to be entitled to the *Basic* presumption of reliance, the market for the security

10  must be "efficient."  *Basic*, 485 U.S. at 247.  Here, there is sufficient evidence of

11  market efficiency.  *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).[3]  Indeed,

12  the Court can presume that MRV's common stock traded in an efficient market

13  because it is traded on the NASDAQ.  *See, e.g., Teamsters Local 445 Freight Div.*

14  *Pension Fund v. Bombadier, Inc.*, No. 05 CV 1898 (SAS), 2006 WL 2161887, at

15  *8 (S.D.N.Y. Aug. 1, 2006) ("If, for example, a security is listed on the NYSE,

16  AMEX, NASDAQ, or a similar national market, the market for that security is

17  presumed to be efficient.").

18      **2.      A Class Action Is a Superior Method of Adjudication**

19      Finally, Rule 23(b)(3) also requires that the action be superior to other

20  available methods for the fair and efficient adjudication of the controversy.  The

21  rule lists several matters pertinent to this finding:

22          (A) the class members' interest in individually controlling the
            prosecution or defense of separate actions;

23

24

25      [3] MRV stock was listed and actively traded on the NASDAQ, an open and
    efficient market, with almost 157 million shares of common stock outstanding

26  shortly after the end of the Class Period. (*See* SCAC ¶ 19. (Dkt. 59).  As a
    regulated issuer, MRV regularly made public filings with the SEC.  It actively

27  communicated with the market through established market communications
    mechanisms and was actively followed and reported on by major securities

28  brokerages and analysts.  (*Id*. at 263-69).

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see Desai*, 2009 WL 2245223, at * 4.  Each factor counsels strongly in favor of class certification.  *See e.g. McPhail v. First Command Financial Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (class action is superior to individual suits when to allow individual suits would "clog . . . the federal courts with innumerable individual suits litigating the same issues repeatedly" and the plaintiffs assert complex claims that "would be very costly to litigate" and each claim is for a relatively small amount).

Further, without the settlement class device, Defendants could not  obtain a classwide release, and therefore would have had little, if any, incentive to enter into the Settlement.  Certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

For all of the foregoing reasons, this Court should find, for settlement purposes only, that the Settlement Class meets the requirements of both 23(a) and 23(b) and should certify the Settlement Class.

### D.     Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Lead Plaintiff respectfully requests that Labaton Sucharow be appointed Class Counsel for the Settlement Class.  As discussed above, Labaton Sucharow has been and will continue to fairly and adequately represent the Class.  Proposed counsel are knowledgeable about the applicable law, extremely experienced in handling class actions, have performed substantial work in pursuing the Settlement Class's claims here and in reaching a settlement, and have committed the necessary resources to representing the

1    Settlement Class.

2         Labaton Sucharow is among the nation's preeminent law firms in this area

3    of practice and has served as lead or co-lead counsel on behalf of major

4    institutional investors in numerous class actions since the enactment of the

5    PSLRA, including *In re American International Group, Inc. Sec. Litig.*, No. 04-

6    8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System,

7    State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund);

8    *In re Countrywide Sec. Litig.*, No. C 07-5295 (C.D. Cal.) (representing the State of

9    New York and New York City Pension Funds); *In re HealthSouth Corp. Sec.*

10   *Litig.*, No. CV-03-1501 (N.D. Ala.) (representing New Mexico State Investment

11   Council, the New Mexico Educational Retirement Board and the State of Michigan

12   Retirement System); and *In re Waste Management, Inc. Securities Litigation*, No.

13   H-99-2183 (S.D. Tex.) (representing Connecticut Retirement Plans and Trust

14   Funds.)  (*See* Gardner Decl., Exhibit 1.)  Labaton Sucharow also served as Lead

15   and Co-lead Counsel in numerous class actions alleging stock option backdating

16   including: (i) *In re Mercury Interactive Corp. Securities Litigation*, No. 5:05-CV-

17   3395 (N.D. Cal.); (ii) *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-

18   CV-02237 (S.D.N.Y.); and (iii) *In re Broadcom Corporation Class Action*

19   *Litigation*, No. 06-5036 (C.D. Cal.), among others. (*Id.*)

20                          **CONCLUSION**

21        For the foregoing reasons, Lead Plaintiff respectfully requests that the Court

22   issue an order substantially in the form of the proposed Preliminary Approval

23   Order: (a) certifying a settlement class; (b) preliminarily approving the Settlement;

24   (c) holding that the manner and form of notice set forth in the Preliminary

25   Approval Order satisfies due process and is the best notice practicable under the

26   circumstances; (d) setting a date for the Settlement Hearing and establishing any

27   currently unspecified deadlines set forth in the Preliminary Approval Order; (e)

28   approving the forms of Notice, Proof of Claim and Summary Notice; (f) appointing

1  Berdon Claims Administration LLC as claims administrator; and (g) ordering that

2  notice substantially in the form of the proposed Notice be given to the proposed

3  Settlement Class.

4  Dated:  April 16, 2010

5  **GLANCY BINKOW & GOLDBERG LLP**

6  By:   /s/ Peter A. Binkow

7  Lionel Z. Glancy #134180
   Peter A. Binkow #173848

8  Michael Goldberg #188669
   1801 Avenue of the Stars, Suite 311

9  Los Angeles, California 90067
   Telephone: (310) 201-9150

10 Facsimile: (310) 201-9160
   *Local Counsel for Lead Plaintiff Kwok*

11 *Wong and the Class*

12 **LABATON SUCHAROW LLP**

13

14 Christopher J. Keller *(pro hac vice)*
   Jonathan Gardner *(pro hac vice)*

15 140 Broadway
   New York, New York  10005

16 Telephone:  (212) 907-0700
   Facsimile:    (212) 818-0477

17 *Attorneys for Lead Plaintiff Kwok Wong*
   *and Lead Counsel for the Class*

18

19

20

21

22

23

24

25

26

27

28